## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| FRANK CHAPIN, *et al.*, | Case No.: 2:14-cv-538-EJL-REB |
| Petitioners, | **REPORT AND RECOMMENDATION RE:** |
| vs. | **PETITIONER'S PETITION TO QUASH THIRD PARTY SUMMONS** |
| INTERNAL REVENUE SERVICE AGENT, HEATHER L. BLAIR, the INTERNAL REVENUE SERVICE, and UNITED STATES OF AMERICA | **(Docket No. 1)** |
| Respondents. | **UNITED STATES' MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION, OR ALTERNATIVELY TO DENY PETITION AND ENFORCE SUMMONS** |
| | **(Docket No. 10)** |

Now pending before the Court is Petitioner's Petition to Quash Third Party Summons (Docket No. 1) and the United States'[1] Motion to Dismiss for Lack of Subject-Matter Jurisdiction, or Alternatively to Deny Petition and Enforce Summons (Docket No. 10). Having carefully considered the record and otherwise being fully advised, the undersigned enters the following Report and Recommendation:

---

[1] Originally, Petitioners also named Internal Revenue Service ("IRS") Agent, Heather L. Blair, and the IRS as Respondents. *See* Pet. to Quash (Docket No. 1). However, a suit against a federal officer in her official capacity is barred by the doctrine of sovereign immunity. *See Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985); *see also* MTD, p. 2, n.2 (Docket No. 10). Therefore, Agent Blair is not a proper party to this action. Further, the IRS is also an improper party because Congress has not authorized suit against it. *See Castleberry v. Alcohol, Tobacco and Firearms Division*, 530 F.2d 672, 673, n.3 (5th Cir. 1976) (stating that Congress has not authorized suit against Department of Treasury or any of its divisions or branches); *see also* MTD, p. 2, n.2 (Docket No. 10).

**REPORT AND RECOMMENDATION - 1**

## RELEVANT BACKGROUND

Heather L. Blair is a Revenue Agent of the IRS, with a post in Spokane, Washington. *See* Blair Decl., ¶ 1 (Docket No. 10, Att. 1).  In her capacity as a Revenue Agent, Agent Blair conducts tax audits and examinations to determine whether a person has unpaid tax liabilities. *See id*. at ¶ 2.  Relevant here, Agent Blair was assigned to conduct an income tax examination of Petitioners, Frank L. Chapin and Sydney Guitierrez-Chapin (the "Chapins"), to determine whether they have unpaid tax liabilities for the tax period ending December 31, 2013.  *See id* at ¶¶ 2 & 8.[2]

In connection with her latest investigation of the tax liability of the Chapins, on December 1, 2014, Agent Blair caused a summons to issue to Mountain West Bank in Coeur d'Alene, Idaho.  *See id*. at ¶ 11.  The summons directed Mountain West Bank to produce for examination the following materials:

1. All bank records for the calendar year(s) ending December 31, 2013 relating to all accounts in the name of and/or under the signatory control of ***Chapin, Frank and/or S. Gutierrez-Chapin also known as Sydney Gutierrez-Chapin and Sydney Chapin***, including but not limited to:

    a. Account signature cards
    b. Bank statements
    c. Canceled checks (both sides) and debit memos

---

[2]  Agent Blair was originally assigned to determine whether the Chapins have unpaid tax liabilities for the tax periods ending December 31, 2009, December 31, 2010, December 31, 2011, and December 31, 2012.  *See* Blair Decl., ¶ 4 (Docket No. 10, Att. 1).  After issuing a third-party summons for these tax years to Mountain West Bank, the Chapins filed a petition to quash that third-party summons in this Court – Case No. 2:14-cv-00443-EJL-REB.  *See id*. at ¶ 5.  At the time Agent Blair issued the third-party summons for records concerning these tax years, the Chapins' tax return for the year 2013 was not yet due.  *See id*.  However, according to Agent Blair, the Chapins failed to file any tax returns for the year 2013, thus prompting the instant action.  *See id*. at ¶ 6.  The earlier action dealing with the above-referenced tax years preceding year 2013 was dismissed on September 10, 2015.  *See* J. in Case No. 2:14-cv-00443-EJL-REB (Docket No. 36).

**REPORT AND RECOMMENDATION - 2**

       d.       Savings account ledger cards
       e.       Deposit slips, deposit items, wire information, and credit memos
       f.       Correspondence
       g.      Escrow accounts

2.      All bank records for the calendar year(s) ending December 31, 2013 relating to all loans made in the name of and/or under the signatory control of **Chapin, Frank and/or S. Guitierrez-Chapin also known as Sydney Gutierrez-Chapin and Sydney Chapin**, including but not limited to:

       a.       Loan applications
       b.       Financial statements
       c.       Loan and credit files
       d.       Correspondence

*See id.* (citing Ex. B to Blair Decl. (Docket No. 10, Att. 3) (emphasis in original). The summons further indicated that, as of December 1, 2014, Agent Blair was requesting "only items #1a, 1b, 1e above," but that "[Mountain West Bank may be asked to provide the other materials at a later date." *See* Ex. B to Blair Decl. (Docket No. 10, Att. 3). Finally, the summons stated that Mountain West could comply with the summons by mailing the requested information to Agent Blair's office in Spokane, Washington by December 27, 2014. *See id.*

On December 19, 2014, the Chapins petitioned this Court to quash the at-issue summons. *See* Pet. to Quash (Docket No. 1). The Chapins' Petition raises nine arguments: (1) Respondents failed to properly serve/notify the Chapins of the summons under 26 U.S.C. § 7609; (2) because the Chapins did not receive notice from Respondents of their right to petition for the full 20 days, Mountain West will have produced the records before the 20 days have elapsed; (3) the summons should be quashed or continued until a final decision is reached in a similar, earlier-filed case before this Court (Case No. 2:14-cv-00443-EJL-REB); (4) the Chapins are "active in the accounting business" and "entitled to any privileges of Evidence rule 515 granting an accountant privilege"; (5) the requested information contains the social security numbers of the

**REPORT AND RECOMMENDATION - 3**

Chapins' clients who are not under audit and such information "cannot be disclosed to a federal agency"; (6) the summons speaks to "records sought completely or partly to determine an economic reality examination technique in an attempt to determine the alleged existence of unreported income and are prohibited by 26 U.S.C. § 7602(e)"; (7) the summons, on its face, was issued for an improper purpose because it "is neither directed at nor limited to records relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning only the [Chapins]"; (8) even if issued for a proper purpose, the manner in which the summons is written is so overbroad and invasive as to render it unenforceable; and (9) the summons was issued in bad faith. *See id*. at pp. 3-6.

The United States disagrees, arguing via its own Motion to Dismiss (which simultaneously stands as an opposition to the Chapins' Petition) that this Court does not have subject-matter jurisdiction owing to (1) the Chapins' failure to provide Agent Blair with notice of their Petition in the required 20 days, and (2) the Chapins' failure to send notice of this action to Mountain West Bank within the required 20 days. *See* MTD, p. 2, 5-8 (Docket No. 10). Separately, as a substantive matter, the United States contends that the IRS is entitled "under the law" to the Chapins' own records, as well as those held by the banks, before going on to reject each of the Chapins' above-mentioned arguments in support of their Petition. *See id*. at pp. 2-3, 8-15.

### REPORT

"Congress has 'authorized and required' the IRS 'to make the inquiries, determinations, and assessments of all taxes' the Internal Revenue Code imposes." *U.S. v. Clarke*, 134 S.Ct.

**REPORT AND RECOMMENDATION - 4**

2361, 2365 (2014) (quoting 26 U.S.C. § 6201(a)).  "And in support of that authority, Congress has granted the [IRS] broad latitude to issue summonses '[f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax . . ., or collecting any such liability.'" *Clarke*, 134 S.Ct. at 2365 (quoting 26 U.S.C. § 7602(a)).  "Such a summons directs a taxpayer (or associated person)[3] to appear before an IRS official and to provide sworn testimony or produce 'books, papers, records, or other data . . . relevant or material to [a tax] inquiry.'" *Clarke*, 134 S.Ct. at 2365 (quoting 26 U.S.C. § 7602(a)(1)).

"The purpose of a summons is 'not to accuse,' much less to adjudicate, but only 'to inquire.'" *Clarke*, 134 S.Ct. at 2367 (quoting *United States v. Bisceglia*, 420 U.S. 141, 146 (1975)).  As an "investigatory tool," a summons represents "a crucial backstop in a tax system based on self-reporting."  *Id.* (restricting summons authority would enable "dishonest persons [to] escap[e] taxation[,] thus shifting heavier burdens to honest taxpayers").  As a result, it is well-established that "courts may ask only whether the IRS issued a summons in good faith, and must eschew any broader role of 'oversee[ing] the [IRS's] determinations to investigate.'" *Clarke*, 134 S.Ct. At 2367 (quoting *United States v. Powell*, 379 U.S. 48, 56 (1964)); *see also Donaldson v. United States*, 400 U.S. 517, 533 (1971) (rejecting rules that would "thwart and defeat the [IRS's] appropriate investigatory powers.").

"Enforcement of a summons is generally a summary proceeding to which a taxpayer has few defenses."  *United States v. Derr*, 968 F.2d 943, 945 (9th Cir. 1992).  The IRS must make a

---

3  "The IRS has authority to summon not only 'the person liable for tax,' but also 'any officer or employee of such person,' any person having custody of relevant 'books of account,' and 'any other person the [IRS] may deem proper.'" *Clarke*, 134 S.Ct. at 2365, n.1 (quoting 26 U.S.C. § 7602(a)(2)).

**REPORT AND RECOMMENDATION - 5**

*prima facie* showing that: (1) there is a legitimate purpose for the investigation; (2) the material sought may be relevant to that purpose; (3) the material sought is not already within the IRS's possession; and (4) the administrative steps required by the Internal Revenue Code have been taken.  *See Powell*, 379 U.S. at 57-58.  "To make that showing, the IRS usually files an affidavit from the responsible investigating agent."  *Clark*e, 134 S.Ct. at 2365 (citing *United States v. Stuart*, 489 U.S. 353, 359 (1989)); *see also United States v. Dynavac, Inc.*, 6 F.3d 1407, 1414 (9th Cir. 1993) ("The government's burden is a slight one, and may be satisfied by a declaration from the investigating agent that the *Powell* requirements have been met.").

Once a *prima facie* case is made, a "heavy" burden is placed on the taxpayer to show an "abuse of process" or "the lack of institutional good faith."  *Dynavac*, 6 F.3d at 1414; *see also Fortney v. United States*, 59 F.3d 117, 120 (9th Cir. 1995).  "The taxpayer must allege specific facts and evidence to support his allegations."  *Liberty Fin. Servs. v. United States*, 778 F.2d 1390, 1392 (9th Cir. 1985).  A party opposing the summons must be able to come forward with at least "a minimal amount of evidence just to entitle him or her to an evidentiary hearing."  *United States v. Stuckey*, 646 F.2d 1369, 1372 (9th Cir. 1981); *see also Clarke*, 134 S.Ct. at 2367 ("[T]he taxpayer is entitled to examine an IRS agent when he can point to specific facts or circumstances plausibly raising an inference of bad faith.  Naked allegations of improper purpose are not enough . . . .  That standard will ensure inquiry where the facts and circumstances make inquiry appropriate, without turning every summons dispute into a fishing expedition of official wrongdoing.").  If no substantial challenge to the validity of the summons is made in a sworn affidavit or declaration alleging specific facts, the matter should be decided on the pleadings before the district court with no further proceedings, the summons should be enforced, and the

**REPORT AND RECOMMENDATION - 6**

IRS should be allowed to obtain the summoned testimony and records.  *See Liberty Fin. Servs.*, 778 F.2d at 1392-93; *Stuckey*, 646 F.2d at 1372-76.

For the reasons stated below, the Court finds that the United States has made a *prima facie* showing of the *Powell* factors and that the Chapins have not met their "heavy" burden of establishing that the summons was issued for an improper purpose.  It is therefore recommended that (1) Petitioners' Petition to Quash Third Party Summons (Docket No. 1) be DENIED, and (2) the United States' Motion to Dismiss for Lack of Subject-Matter Jurisdiction, or Alternatively to Deny Petition and Enforce Summons (Docket No. 10) be GRANTED.

**A.      The United States Has Made a *Prima Facie* Showing Supporting Enforcement of the Summons**

> 1.      Legitimate Purpose

The IRS is authorized to issue summonses "in good faith pursuit of the congressionally authorized purposes of § 7602."  *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 318 (1978).  As stated above, these purposes include: "ascertaining the correctness of any return, making a return where none has been made, [and] determining the liability of any person for any internal revenue tax."  26 U.S.C. § 7602(a).  Here, Agent Blair's declaration states that:

> The summons at issue in this case is for information that might be relevant to the taxpayers' income tax liabilities for the tax year 2013.  The purpose of the summons is to facilitate review of the income reported by the taxpayers on their United States Individual Income Tax Returns (Forms 1040) for the year under examination.

Blair Decl., ¶ 13 (Docket No. 10, Att. 1).  From this, it is clear that the United States has made a *prima facie* showing that it had a legitimate purpose in serving the summons on Mountain West Bank.

**REPORT AND RECOMMENDATION - 7**

2.      Relevant Information

The IRS is authorized to inquire as to all items that may be of "potential relevance to its investigation."  *United States v. Arthur Young & Co.*, 465 U.S. 805, 814 (1984).  Materials requested by summons are potentially relevant to an IRS investigation when they "might throw light upon the correctness of the return."  *David H. Tedder & Assocs. v. United States*, 77 F.3d 1166, 1168 (9th Cir. 1996).  In other words, materials summoned are relevant if the IRS has "a realistic expectation rather than an idle hope that something may be discovered."  *Id*. at 1169.  In this respect, Agent Blair's declaration states:

> The bank records are sought because they are very likely to show bank deposits (which may represent taxable income), as well as withdrawals (which may represent deductible expenses).
>
> Taxpayers have refused to file a tax return for 2013.  They have also refused to provide me with any financial records for 2013.  Accordingly, without document requests and summonses directed towards third parties, I cannot determine Taxpayers' income for the tax year ending December 31, 2013.
>
> The information sought by the summons may be relevant to whether the taxpayers have additional taxable income.  I have a reasonable expectation that the records for the periods listed in the summons might help determine the extent of the income required to be reported on the returns I am examining.

Blair Decl., ¶¶ 14-16 (Docket No. 10, Att. 1).  The record clearly supports a *prima facie* showing by the United States that the bank records sought from Mountain West Bank *may be* relevant to determining the Chapins' tax liability for tax year ending December 31, 2013.  *See, e.g.*, *Arthur Young*, 465 U.S. at 814 ("The language 'may be' reflects Congress' express intention to allow the IRS to obtain items of even *potential* relevance to an ongoing investigation, without reference to its admissibility.  The purpose of Congress is obvious: the Service can hardly be expected to know whether such data will in fact be relevant until they are procured and scrutinized.").

**REPORT AND RECOMMENDATION - 8**

3.      Lack of Possession

Inherently obvious within Agent Blair's testimony concerning her interaction with the
Chapins *vis à vis* her information document request to the Chapins (*see* Blair Decl., ¶ 9 (Docket
No. 10, Att. 1)), is the fact that the information sought in the summons is *not* already in the IRS's
possession. That the Chapins may have produced *some* relevant information is not enough when,
according to Agent Blair, the information produced was incomplete for one reason or another.
Agent Blair's declaration goes on to state in no uncertain terms that "[t]he information sought by
the summons is not in the IRS's possession."  *Id*. at ¶ 17.  The United States has therefore made
a *prima facie* showing that it is not in possession of the requested materials.

4.      Administrative Steps

A third-party summons issued by the IRS may be served by certified or registered mail to
the last known address of the summoned party.  *See* 26 U.S.C. § 7603(b).  The IRS is also
required to provide notice of such a third-party summons to the taxpayer.  *See* 26 U.S.C.
§ 7609(a).  In this respect, Agent Blair's declaration states:

> In accordance with 26 U.S.C. § 7603(b), I served an attested copy of the summons
> directed to Mountain West Bank by certified mail.  Notice of the summons was given
> to Frank L. Chapin and Sydney Gutierrez-Chapin within three days of the day on
> which such service was made, in accordance with 26 U.S.C. § 7609, by mailing a
> copy of the summons by certified mail to the last known addresses of Frank and
> Sydney Chapin. . . . .
>
> The administrative steps required to issue a summons have been met.

Blair Decl., ¶¶ 12 & 18 (Docket No. 10, Att. 1).  In bringing this action, the Chapins originally
seemed to challenge the accuracy of these statements, contending that they were never properly
served with the summons.  *See* Pet. to Quash, p. 3 (Docket No. 1) ("The Summons copies were
received on December 15, 2014 by mail from Mountain West Bank.  Until that time, Petitioners

**REPORT AND RECOMMENDATION - 9**

had no notice whatsoever of the subpoena for the calendar year 2013."). *Except*, Petitioner

Sydney Chapin signed a certificate acknowledging receipt of the summons on December 2, 2014

(the day after the summons was issued). *See* Ex. B to Blair Decl. (Docket No. 10, Att. 3).[4]

Therefore, the United States has made a *prima facie* showing that the administrative steps

required by the Internal Revenue Code have been taken.

**B.      The Chapins Have Not Met the Heavy Burden Required to Quash the Summons**

Because the United States has met its burden under *Powell*, the burden shifts to the

Chapins to show an abuse of process or bad faith.  The Chapins do not meet this burden.

1.      <u>There is No Pending Action Impeding the Instant Action's Progression</u>

At the time the Chapins filed the instant action, a similar action (dealing with different

tax years) was pending before this Court – Case No. 2:14-cv-00443-EJL-REB.  As mentioned

earlier, that action has since been resolved in the United States' favor.  *See* Order & J. in Case

No. 2:14-cv-00443-EJL-REB (Docket Nos. 35 & 36) (U.S. District Judge Edward J. Lodge

granting Respondents' motion to dismiss, ordering that Petitioners take nothing from

Respondents, and dismissing case in its entirety).  In light of that earlier action's resolution, on

November 10, 2015, the undersigned issued the following Order:

> Plaintiffs filed this action on December 19, 2014.  On March 4, 2015, Defendants
> filed a motion to dismiss, still pending before the Court.  On April 6, 2015, U.S.
> District Judge Edward J. Lodge referred all matters to the undersigned and, on
> October 6, 2015, Defendants' motion to dismiss was formally referred to the
> undersigned.
>
> <u>Each party is now ordered to briefly update the Court on the status of the motion to
> dismiss, taking into account the Court's resolution in the interim of a possibly-related</u>

---

[4]  The Chapins do not address this apparent fact (or re-raise the issue of an alleged lack of
service/notice) in their response to the United States' Motion to Dismiss.  *See* Resp. to MTD
(Docket No. 15).

**REPORT AND RECOMMENDATION - 10**

> case involving the same parties – 2:14-cv-00443-EJL-REB. Specifically, how does
> the Court's resolution of his earlier case impact the motion to dismiss, if at all?
> Ideally, the parties will do so in a joint filing; if this is not possible, each party is to
> do so individually on or before **November 20, 2015**.

11/10/15 Order (Docket No. 23) (emphasis in original).

The parties were apparently unable to file a joint statement, instead filing individual

status reports by the requested date. *See* Status Rpts. (Docket Nos. 24 & 25). According to

Petitioners, the earlier action's completion does not now affect the instant action:

> Counsel for Petitioners submits that this case has not been resolved by the earlier
> suit, and submits that the facts in this case are not identical to the first case and the
> first case has not been finally adjudicated. Therefore, collateral estoppel does not
> apply.
>
> Counsel for Petitioners admits that a notice of appeal has not been filed and no
> appeal is contemplated. However, Petitioner's submit that the disposition should not
> influence the decision on this case.

Pet.'s Status Rpt., p. 2 (Docket No. 24). The United States rejoined in this manner:

> Counsel for the United States submits that some of the issues (*e.g.*, whether
> Petitioners have made a showing of bad faith or improper purpose), may be subject
> to collateral estoppel, as the same facts and allegations were considered and resolved
> in the United States' favor in the earlier suit. Counsel for United States also submits
> that, because the time for filing a notice of appeal in the earlier case has passed, the
> Court's order in that case constitutes a final adjudication.

Resp'ts' Status Rpt., p. 2 (Docket No. 25).

In other words, there is no longer any other action that would support delaying the

enforcement of the IRS's summons at this point in the litigation. The Chapins' argument in this

respect is non-availing.

### 2.      Accountant-Client Privilege

As the United States' points out, the summons requests information from Mountain West

Bank – not from any accountant – about the Chapins' bank accounts. *See* MTD, p. 13 (Docket

No. 10). The Chapins identify no privilege that exists between them and their bank. More

**REPORT AND RECOMMENDATION - 11**

significantly, neither the common law nor federal courts recognize an accountant-client privilege

in tax investigation proceedings.  *See Couch v. United States*, 409 U.S. 322, 335 (1973); *United*

*States v. Devon Bank*, 529 F. Supp. 40, 43 (D.C. Ill. 1981).  Consequently, the Chapins' assertion

of the accountant-client privilege here does not constitute a legally valid basis for quashing the

IRS summons directed at Mountain West Bank.

       3.      <u>Social Security Numbers</u>

      According to the Chapins, "[t]he records sought contain large numbers of social security

numbers of [their] client who are not under audit by [the IRS]."  Pet. to Quash, p. 4 (Docket No.

1); *see also* Chapin Decl., ¶ 4 (Docket No. 1, Att. 5).  According to the Chapins, disclosing such

information violates federal law.  However, the legal authority they cite in support of this

proposition does not apply.  *See* Pet. to Quash, p. 4 (Docket No. 1) (citing 5 U.S.C. § 552(a), 26

U.S.C. § 6103(a)(2), 31 C.F.R. § 1.32).

      For instance, 5 U.S.C. § 552, the Freedom of Information Act, sets forth the records and

information that an agency of the federal government must make available to private citizens

upon request; it does not put limits on the ability of the IRS to recover information from a bank

or other private citizen.  Similarly, 26 U.S.C. § 6103(a)(2) prohibits disclosure of returns and

return information by any "officer or employee of any State, any local law enforcement agency

receiving information under subsection (i)(7)(A), any local child support enforcement agency, or

any local agency administering a program listed in subsection (l)(7)(D) who has or had access to

returns or return information under this section or section 6104(c)."  26 U.S.C. § 6103(a)(2).

Except the IRS is attempting to obtain information from Mountain West Bank, a private entity

that is not subject to 26 U.S.C. § 6103(a)(2)'s reach.  Finally, 31 C.F.R. § 1.32 merely allows

**REPORT AND RECOMMENDATION - 12**

individuals to refuse to disclose social security numbers when requested by a federal agency unless the disclosure "is required by Federal statute."  31 C.F.R. § 1.32(a) & (b).  This does not apply to the bank and, even if it did, an argument exists that compliance with the summons is required by federal law.  *See supra.*

Still, such general concerns do not go unnoticed.  *See supra.*  Indeed, in the earlier action, the undersigned recommended limiting the then-applicable summons for these related reasons. *See* Rpt. & Recomm. in Case No. 2:14-cv-00443-EJL-REB, p. 11 (Docket No. 33) ("With these concerns in mind, the summons should be limited only to deposits made by the Chapins (or any entity they control) and withdrawals payable to same (check or electronic) and cash; *deposits and withdrawals made by, or on behalf of, other entities should be outside the scope of the summons.  To the extent not already contemplated by the summons in its current state, it should be refined accordingly.*") (emphasis added).  However, on review of that recommendation, Judge Lodge disagreed, finding:

> The Court has reviewed the objection *de novo*[5] and finds that the recommended limitations should not be imposed.  While the Court is aware of the Petitioners' general concerns regarding disclosure of information about third parties, the fact of the matter is that Respondent has satisfied the prima facie showing that the IRS properly issued the summons and the Petitioners have not shown any abuse of process or bad faith.  That is all that is required here.  *See Liberty Fin. Serv. v. United States*, 778 F,.2d 1390, 1392 (9th Cir. 1985) (per curiam) (stating the *Powell* prima facie requirements are minimal "because the statute must be read broadly in order to ensure that the enforcement powers of the IRS are not unduly restricted."); *see also United States v. Clarke*, 134 S.Ct. 2361, 2367 (2014); *United States v. Powell*, 379 U.S. 248, 252-58 (1964).  As such, the Court does not adopt the Report's recommendation to limit the summons.

*See* Order in Case No. 2:14-cv-00443-EJL-REB, p. 4 (Docket No. 35).  With Judge Lodge's Order now serving as the backdrop for considering the Chapins' repeated objection to the summons, there is no basis to quash the summons outright or limit it in any way.

---

5  The United States filed an objection to the undersigned's recommendation, arguing that there is no legal basis for the above-referenced limitation of the summons.  *See* Obj. in Case No. 2:14-cv-00443-EJL-REB (Docket No. 34).

**REPORT AND RECOMMENDATION - 13**

4.  Economic Reality Examination Techniques

There are two methods of proof in tax cases: (1) direct or specific item methods; and (2) indirect methods (financial status or economic reality examination techniques).  *See United States v. Marabelles*, 724 F.2d 1374, 1377, n.1 (9th Cir. 1984) ("'The specific item method is . . . direct in its operation.  The usual strategy . . . is for the Government to produce evidence of the receipt of specific items of reportable income by the defendant that do not appear on his income tax return or appear in diminished amount.'") (quoting *United States v. Horton*, 526 F.2d 884, 886 (5th Cir. 1976)); *see also United States v. Hart*, 70 F.3d 854, 860, n.8 (6th Cir. 1995) ("In the 'indirect' method, the defendant's finances are reconstructed via circumstantial evidence including (1) net worth analysis; (2) bank deposits; and (3) cash expenditures in excess of reported income.").

The IRS may not use indirect methods (also known as financial status or economic reality examination techniques) to determine the existence of unreported income unless it has a reasonable indication of the existence of that unreported income.  *See* 26 U.S.C. § 7602(e) ("The Secretary shall not use financial status or economic reality examination techniques to determine the existence of unreported income of any taxpayer unless the Secretary has a reasonable indication that there is a likelihood of such unreported income."); *see also* H.R. Conf. Rep. No. 105-599 at 270 (1998) ("The provision prohibits the IRS from using financial status or economic reality examination techniques to determine the existence of unreported income of any taxpayer unless the IRS has a reasonable indiction that there is a likelihood of unreported income.").  "Financial status or economic reality examination techniques focus on the lifestyle of the taxpayer and other elements unrelated to the specific preparation of the tax return, such as net

**REPORT AND RECOMMENDATION - 14**

worth and bank deposits." *Trevino v. United States*, 2005 WL 4829608, *3 (N.D. Cal. 2005) (citing 1998 *Tax Legislation: Law, Explanation and Analysis*, at 270 (CCH 1998); General Accounting Office Report GAO/T-GGD-97-186, *Tax Administration: Taxpayer Rights and Burdens During Audits of Their Tax Returns*, at 9 (Sept. 26, 1997)).

Here, the parties dispute the method of proof used by the IRS.  *Compare* Pet. to Quash, p. 5 (Docket No. 1), *with* MTD, pp. 12-13 (Docket No. 10).  Regardless, even if the method is indirect,[6] the allegedly incomplete bank records provided to the IRS by the Chapins reasonably indicate that there is a likelihood of unreported income for the tax year at issue because, according to Agent Blair, the Chapins have not only refused to provide her with any records of their income, they have refused to even file a tax return for the 2013 tax year.  *See* Blair Decl., ¶¶ 6-10 (Docket No. 10, Att. 1); *see also, e.g.*, *Trevino*, 2005 WL 4829608 at *4.

   5.   Substantive Objections

The Chapins go on to argue that the summons was issued for an improper purpose and that they have already "voluntarily submitted many bank records that are sufficient."  Pet. to Quash, p. 5 (Docket No. 1).  Except, according to Agent Blair, the Chapins have declined to provide *any* records, or even a tax return, for the year 2013.  *See* Mot. to Dismiss, p. 10 (Docket No. 10) (citing Blair Decl., ¶¶ 6-10 (Docket No. 10, Att. 1)).  Even if the IRS has some of the requested documents, or at least some version of those documents, it is nevertheless entitled to the records and other information from third parties like Mountain West Bank to determine if

---

   [6]  On this point, the United States argues that Agent Blair wants "to examine the taxpayers' bank records to determine whether there is non-reported income (as evidenced by bank deposits), or deductible expenses (as evidenced by withdrawals)" – "direct" methods of proof in tax cases, not "indirect" methods of proof.  MTD, p. 12 (Docket No. 10) (citing Blair Decl., ¶ 14 (Docket No. 10, Att. 1)).

**REPORT AND RECOMMENDATION - 15**

they are consistent.  *See Liberty Fin. Servs.*, 778 F.2d at 1392-93 ("The district court held that

the IRS could not ascertain whether all relevant records had been released until it had examined

the requested documents.  It also held that the IRS is entitled to compare for accuracy, the

records produced by [the taxpayer] with those held by [the taxpayer's bank].  We agree.");

*United States v. Luther*, 481 F.2d 429, 432 (9th Cir. 1973) (fact that IRS already had access to

some records filed by corporation did not "destroy the government's right to inspect the

[corporation's] original and primary records."); *Sugarloaf Funding, LLC v. U.S. Dept. of the

Treas.*, 584 F.3d 340, 350 (1st Cir. 2009) (holding that IRS is entitled to obtain records from third

parties to ascertain the accuracy of records already provided by the taxpayer); *Mollison v. United

States*, 481 F.3d 119, 124 (2nd Cir. 2007) (same).

 The Chapins next contend that the summons is overly broad in that it "seeks privileged,

personal, and confidential records of the [Chapins] and third parties which are clearly irrelevant

to any investigation pertaining to the administration or enforcement of he internal revenue laws."

Pet. to Quash, pp. 5-6 (Docket No. 1).  However, again, such conclusory statements are not

enough; moreover, the legal authority (cited elsewhere within the Chapins' Petition to Quash) for

such propositions does not apply here.  *See supra*.  The same goes for the Chapins' position that

the summons was issued in bad faith.  *See* Pet. to Quash, p. 6 (Docket No. 1).  There is simply no

factual backdrop in which this Court can conclude this to be the case – to be sure, the record

reflects just the opposite.  Simply put, the United States has made a *prima facie* showing that the

bank records sought from Mountain West Bank *may be* relevant to determining the Chapins' tax

liability for tax year 2013.  *See supra*.  It can be expected that the Chapins believe otherwise,

however such a position on the part of the Chapins does not translate into an abuse of process or

**REPORT AND RECOMMENDATION - 16**

bad faith by the IRS in issuing the summons.  Perhaps, in the future, the  Chapins' position may prevail; however, whatever substantive reason might possibly exist for such an ultimate finding down the road does not warrant the quashing of the summons at this initial stage.

With all this in mind, the Chapins offer no actual evidence that the IRS acted improperly, nor does the circumstantial evidence in the record support such an inference.  The Chapins cannot meet their "heavy" burden simply by arguing that the summons is a fishing expedition and that the information is being sought to harass them.  Without specific facts or evidence to support their allegations of bad faith, the Chapins cannot meet their burden to quash the summons.

## **RECOMMENDATION**

Based on the foregoing, IT IS HEREBY RECOMMENDED that Petitioners' Petition to Quash Third Party Summons (Docket No. 1) be DENIED and the Unite States' Motion to Dismiss for Lack of Subject-Matter Jurisdiction, or Alternatively to Deny Petition and Enforce Summons (Docket No. 10) be GRANTED.[7]

///

///

///

///

///

///

///

---

[7]  In making this Recommendation, the undersigned need not address the United States' alternate jurisdictional challenges.

**REPORT AND RECOMMENDATION - 17**

Pursuant to Local Civil Rule 72.1(b)(2), a party objecting to a Magistrate Judge's recommended disposition "must serve and file specific, written objections, not to exceed twenty pages . . . within fourteen (14) days. . ., unless the magistrate or district judge sets a different time period."  Additionally, the other party "may serve and file a response, not to exceed ten pages, to another party's objections within fourteen (14) days after being served with a copy thereof."

DATED:  **January 8, 2016**



_____
Honorable Ronald E. Bush
Chief U. S. Magistrate Judge

**REPORT AND RECOMMENDATION - 18**